UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAYE ZHENGXING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-1918 (RWR) |
| ) | |
| UNITED STATES PATENT ) | |
| AND TRADEMARK OFFICE, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO DISMISS AND
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant United States Patent and Trademark Office ("USPTO"), hereby moves to dismiss this case pursuant to Fed. R. Civ. P. 12 (b)(1) and 12(b)(6) and also opposes plaintiff's motion for summary judgment.

Respectfully Submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____/s/_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
202/514/6970
Facsimile: (202) 514-8780

*Of Counsel*:

Stephen Walsh
Acting Solicitor, U.S. Patent and Trademark Office

Benjamin D. M. Wood
Joseph G. Piccolo
Associate Solicitors

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAYE ZHENGXING, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 07-1918 (RWR) |
| UNITED STATES PATENT AND TRADEMARK OFFICE,[1] | ) |
| Defendant. | ) |

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant United States Patent and Trademark Office ("USPTO"), hereby submits this memorandum in support of its motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and in opposition to plaintiff's motion for summary judgment. The Complaint sounds in tort, and is therefore subject to the provisions of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* Under the FTCA, Plaintiff was required to first present her tort claim to the agency and wait for the agency to deny that claim before she could initiate a tort action against the United States. Plaintiff's failure to exhaust her administrative remedies in this manner renders this Court without subject-matter jurisdiction to hear her claim, and thus the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

---

[1] In her Complaint Plaintiff incorrectly refers to Defendant as the "U.S. Patent Office." The above caption reflects Defendant's proper title under 35 U.S.C. § 1(a).

## I.  BACKGROUND

### A.   Brief Overview of the Relevant Aspects of Patent Examination Process

An inventor seeking to patent her invention must file a patent application with the USPTO.  The application is, essentially, a draft patent.  Like a patent, it contains two primary parts:  (1) a "specification;" and (2) one or more "claims."  The specification must describe the invention, and how to make and use it, in sufficient detail to enable "any person skilled in the art [technology] to which [the invention] pertains" to make and use the invention.  35 U.S.C. § 112, first paragraph.  The claims, on the other hand, identify what the applicant regards as the applicant's invention; *i.e.*, the scope of legal protection the applicant believes the invention is entitled to receive.  35 U.S.C. § 112, second paragraph.  Each claim is a single sentence that contains a number of "limitations" directed to the various features of the subject matter claimed.  35 U.S.C. § 112; *Hyatt v. Dudas*, No. 03-0901, 2005 WL 5569663, at *2 (D.D.C. Sept. 30, 2005).

When the application is received by the USPTO, it is given to a patent examiner for examination.  The examiner determines whether each claim satisfies certain statutory patentability requirements.  *See* 35 U.S.C. § 101 (obtaining patent "subject to the conditions and requirements of this title").  For example, the examiner will determine whether each claim is "novel," *i.e.*, new, and also whether it would have been "nonobvious" to a person of ordinary skill in the relevant art.  35 U.S.C. §§ 102, 103.  *See* 37 C.F.R. § 1.104 ("The examination shall be complete with respect both to compliance of the application . . . with the applicable statutes

and rules and to the patentability of the invention as claimed, as well as with respect to matters of form.").

Each application should only claim one independent and distinct invention; if the examiner determines that the application claims two or more independent and distinct inventions, the examiner may impose a "requirement for restriction" (or "restriction requirement") on the application. 35 U.S.C. § 121. This requires the applicant to choose, or "elect," which invention she would like to have examined in that application. If the applicant wants to have the other inventions examined, the applicant would need to file additional applications disclosing and claiming the additional inventions. The examiner may inform the applicant of the requirement for restriction by issuing an "office action" to the applicant.

      **B.**    **Prosecution of Plaintiff's Patent Application**

Plaintiff Faye Zhengxing and others ("Plaintiff," or "Ms. Zhengxing") filed U.S. Application No. 10/681,103 ("the '103 application") on October 9, 2003. Compl. at 2; Compl., Attachment ("Att.") 1. A petition to make the application "special" in view of the age of one of the inventors – and thus to examine the application ahead of earlier-filed applications – was filed on February 25, 2004 and granted on March 30, 2005. Compl. at 3; Compl., Att. 2. The '103 application was published on March 17, 2005 as U.S. Pub. No. 2005/0058718.

According to the specification, the invention consists of two parts: a "liquid additive" to be added to cigarette tobacco, and two different "health pills" to be taken orally by smokers. Compl., Att. 18 at 3. Plaintiff describes the invention as "aimed at enhancing the health of smokers through reducing tobacco toxins, strengthening smokers' immunity and eliminating smokers' addiction." Compl. at 2.

The '103 application originally contained 4 claims. Claim 1 was drawn to both the liquid additive and health pills, but did not specify any particular ingredients of these items. Compl., Att. 18 at 23. Claim 2 was drawn to a liquid additive comprised of 11 specific ingredients. *Id.* Claim 3 was drawn to health pills comprised of ingredients different from those comprising the liquid additive of claim 3. *Id.* at 23-25; Compl., Att. 14 at 3. Claim 4 was drawn to a method of eliminating nicotine addiction by using "copper compound," "manganese compound," and various vitamins. Compl., Att. 18 at 25.

The examiner issued his first office action on June 20, 2005. Compl. at 3; Compl., Att. 4. In this office action, the examiner, *inter alia*,[2] established a restriction requirement under 35 U.S.C. § 121.[3] In this regard, the examiner considered the four claims to be four distinct inventions, or inventive "groups." Compl., Att. 4. at 2-5. The examiner stated that the claims "are distinct, each from the others, because they are each directed to divergent compositions or methods, with different combination of composition components." Compl., Att. 4 at 3. The examiner therefore directed the Applicants to make an election of one of the four inventions for further prosecution. *Id.* at 4.[4] Aware that Ms. Zhengxing was prosecuting the '103 application *pro se*, the examiner explained how to make such an election and even provided a properly

---

[2] The examiner also identified numerous problems with the form of the original claims.

[3] Section 121 reads in pertinent part: "If two or more independent and distinct inventions are claimed in one application, the Director may require the application to be restricted to one of the inventions. If the other invention is made the subject of a divisional application which complies with the requirements of section 120 of this title it shall be entitled to the benefit of the filing date of the original application."

[4] Under 35 U.S.C. § 121 the remaining claims could be prosecuted in subsequent "divisional" applications.

4

drafted claim as an example for her to follow. Compl., Att. 4 at 4-5. The examiner followed the office action with a telephone interview with Plaintiff to further explain how to respond to the restriction requirement. Compl. at 3; Compl., Att. 6.

The Applicants responded to the restriction requirement around July 20, 2005. Compl. at 3; Compl., Att. 5. The Applicants purported to elect Group 3 (claim 3), canceled the original claims, and submitted a new "claim 5." Compl. at 3; Compl., Att. 5 . "Claim 5," however, was written in the form of 5 separate claims: the first two drawn to an "oral dosage," the third drawn to a liquid additive for tobacco, and the final two drawn to methods for "resuming the activity of glutathione peroxidase," and for "eliminating smoker's addiction," respectively. *Id.* The applicants did not expressly "traverse" (express disagreement with) the restriction requirement at this time.

According to Plaintiff, "a few weeks after" submitting the amended claims (*i.e.*, in August 2005):

> Faye Zhengxing called [the USPTO] to ask the status quo of the application. A woman examiner took a few minutes to check the record and informed [Plaintiff] that this application had passed the examination. More specifically, she said (to the effect), 'To say your application did not pass the examination is a mistake.' Patent office's phone recording should have proved the truth. Delighted by the success, Faye Zhengxing told the good news to the major inventor (her father) and others. They all cheered and Faye Zhengxing celebrated the success with her friends.

Compl. at 4.

On March 19, 2007, about 20 months after amending the claims, Ms. Zhengxing sent a letter to the USPTO to "protest" the "abandonment" of the '103 application. Compl. at 7; Compl., Att. 11. Ms. Zhengxing claimed that the delay "has taken a toll on the market value of

5

our patent." Compl., Att. 11. Ms. Zhengxing also talked with the examiner on the phone, who allegedly told her that "he was only a small government employee and he could not explain the time wasted." Compl. at 7. Upon hearing this, Ms. Zhengxing "immediately perceived the abused power behind, which had damaged her life in every way such as her career, her property, her health and her family." *Id.*[5]

In a letter dated April 15, 2007, Ms. Zhengxing responded again to the examiner's June 21, 2005 restriction requirement. Compl., Att. 17. In this response she elected Group III, corresponding to the claim for the health pills. *Id.* at 1. She stated that it was "appropriate to choose Group 3 to demonstrate the fundamental thrust of this invention," but that she still "regard[ed] other original claims as indispensable and supplemental compositions to Group 3." *Id.* Accordingly, she canceled original claims 1-4, and submitted new claims 5-9. *Id.* at 2-3.

---

[5] Ms. Zhengxing is apparently referring here to her numerous allegations of impropriety against "U.S. Attorney David Cohen." These allegations include diverting a portion of a cash award that Ms. Zhengxing had received in litigation against the federal government; causing toxic gas and laser beams to be directed at Plaintiff and her family; instructing an NYPD officer to detain Plaintiff against her will; and directing the USPTO to "abandon" the '103 application. Compl. at 6-7, 19. While for purposes of this motion the court must accept all the complaint's well-pled factual allegations as true, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), these outlandish allegations are completely unsupported and/or can easily be shown to be false. For example, Ms. Zhengxing never prevailed in any of her previous litigations against the federal government, much less received any cash award as a result of that litigation. *See Zhengxing v. Nathanson*, 215 F.Supp.2d 114, 115 (D.D.C. 2002) (dismissing Ms. Zhengxing's employment discrimination action); *aff'd sub. nom. Zhengxing v. Tomlinson*, 2002 WL 31926829 (D.C. Cir. Dec. 31, 2002), *reh'g and reh'g en banc denied*, (Mar. 14, 2003), *cert. denied*, 539 U.S. 965 (2003); *Zhengxing v. United States*, 71 Fed. Cl. 732, 733-34 (2006) (dismissing Ms. Zhengxing's various claims for lack of subject matter jurisdiction), *aff'd* 2006 WL 3228605 (Fed. Cir. Nov. 8, 2006), *reh'g denied*, (Dec. 18, 2006).

Claims 5 and 6 were drawn to the health pills (*i.e.*, the Group III invention), new claim 7 was drawn to the liquid additive, and new claims 8 and 9 were drawn to methods.

On May 31, 2007, Examiner Pak provided Ms. Zhengxing with numerous suggested changes to her claims and specification in order to improve the chances for allowance of the claims. Compl., Att. 12. Ms. Zhengxing responded by letter on June 8, 2007. Compl. at 8; Compl., Att. 13. In this response she expressed her understanding that a woman employee of the USPTO had informed her in 2005 that the application had already "passed the examination." Compl., Att. 13 at 1. *Id.* Ms. Zhengxing also indicated that she will "pursue the tremendous damages caused by the intentional and 'illegal' abandonment of your normal process over the past two years." *Id.* Finally, she refused to cancel claims 7, 8, and 9 (which the examiner apparently recommended be done to conform to the original restriction requirement). *Id.*

Examiner Pak issued another office action dated June 15, 2007. Compl., Att. 14.[6] In this office action he noted the applicant's election of Group III – the claims relating to the health pill – with traverse, and explained in detail why the restriction requirement was proper and would be maintained. Compl., Att. 14 at 2-5. The examiner went on to reject claims 5-6 – those claims associated with Group III – for failure to comply with the requirements of 35 U.S.C. § 112. *Id.* at 5-10.

Ms. Zhengxing submitted a "petition to the Director" on July 31, 2007, asking the Director to "investigate this case and render [the applicants] justice." Compl. at 9. In a Petition

---

[6] Att. 14 is actually the text of the examiner's June 15, 2007 office action that Plaintiff mistakenly attached to a cover sheet for an examiner-initiated interview summary dated June 7, 2007.

7

Decision dated September 28, 2007, the Director of Technology Center 1600 denied the petition. *Id.*; Compl., Att. 16.

Plaintiff filed the present Complaint on October 24, 2007.  *See* Summons.

**C.     Complaint**

The Complaint asks for a damage award of $450 million.  Compl. at 24.  Plaintiff claims that this award is needed to compensate Plaintiff and the other applicants, including her father, for 20 years' worth of the research and development expenses related to the claimed invention, the value of which was allegedly harmed by the delay in prosecution; and for "tremendous mental anguish and high stress inflicted on applicants after Defendant abandoned their application and further hasseled [sic] them with its restriction requirements."  *Id.*  The requested damage award also includes a request for punitive damages.  Compl. at 24-25.

In her Complaint Plaintiff essentially alleges three incidents of wrongdoing by Defendant: First, that the examiner's "self-contradictory restriction requirements" were improper; second, that Defendant "unlawful[ly] abandon[ed]" the '103 application and caused "further delay;" and third, that Defendant exhibited a "faultfinding attitude in order to shift the responsibility to applicants." Compl. at 10.

With respect to the examiner's restriction requirement, Plaintiff complains that by maintaining the restriction requirement in 2007, the examiner was acting inconsistently with the Office's "decision in 2005," the purported statement from an unnamed female employee of the Office that the '103 application had "passed the examination."  Compl. at 4, 10.  Plaintiff also argued that the restriction requirement itself was improper.  *Id.* at 10-15.

8

Plaintiff next accuses Defendant of the "unlawful abandonment" of the '103 application, and the subsequent "cover up" of the abandonment. Compl. 15-21. Plaintiff alleges that a "US Attorney David Cohen" ordered the USPTO to abandon the ''103 application. Compl. at 19. Based on Plaintiff's allegation that Mr. Cohen sent $7 million from a damage award belonging to Plaintiff to open a bank account in China, she concludes that "only Cohen, who has been working intensively on her case (mainly in surveillance and finance), had both the motive and means to harm them as he has done so much over the past two years." *Id.* Plaintiff further accuses Defendant of covering up the abandonment by "changing the subject of argument" from that of the abandonment of the application to "a dispute over restriction requirements." Compl. at 16-17. Plaintiff also alleges that the Director, in denying Plaintiff's petition, "made up" and "distorted" certain facts. For example, Plaintiff found "ridiculous" the Director's explanation of Plaintiff's understanding that the '103 application had "passed the examination" in 2005:

> Applicants appear to be of the belief that a telephone conversation with an unnamed Office employee shortly after the application was filed was an indication that the application would issue as a patent. . . . What in all likelihood happened is that after filing the application applicants talked with an individual who indicated that the application had been received and had been initially reviewed for compliance with the applicable filing requirements and had met them and that the application was, therefore, ready for examination by a qualified examiner.

Compl. at 19-20 (quoting Compl., Att. 16 at 3).

Finally, the Complaint criticizes the examiner for "mak[ing] suggestions on some insignificant issues," for the purpose of "shift[ing] responsibility or liability to applicants." Compl. at 21. The Complaint specifically criticizes the examiner for rejecting the claims under 35 U.S.C. § 112. Compl. at 22-23; Compl., Att. 14 at 6-7.

9

## II.  ARGUMENT

A suit against the United States and its agencies is barred by the doctrine of sovereign immunity unless the United States consents to suit.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  While the Complaint does not expressly set forth the statutory basis upon which Plaintiff relies for asserting her claims for money damages against the USPTO, her claims sound in tort and are thus subject to the provisions of the FTCA.  Specifically, Plaintiff (1) seeks money damages; for (2) an injury to property (the invention); and for (3) personal injury; caused by (4) the wrongful acts or omissions of an employee of the Government.  Compl. at 2, 7, 9, 24-25.  Under 28 U.S.C. § 1346(b), such claims are subject to the provisions of Chapter 171 of Title 28, Sections 2671 *et seq.*, *i.e.*, the FTCA.  *See Schneider v. Kissinger*, 310 F.Supp.2d 251, 269-70 (D.D.C. 2004) (even though Complaint not expressly based on FTCA, the FTCA applied because complaint addressed claims for money damages for injury caused by negligent or wrongful act or omission of Government employees).

### A. Plaintiff Has Failed to Exhaust Her Administrative Remedies Before Bringing this Suit

Plaintiff's Complaint must be dismissed because Plaintiff failed to completely exhaust administrative remedies prior to filing her Complaint.  Under the FTCA, a tort claim cannot be brought against an agency of the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency *and* his claim shall have been finally denied by the agency."  28 U.S.C. § 2675(a) (emphasis added).  "This requirement is *jurisdictional*; if a plaintiff does not exhaust administrative remedies then the District Court lacks subject matter jurisdiction to entertain his claims."  *Singleton v. Dept. of Army*, 2007 WL 2601934, at *3

(D.D.C. Sept. 6, 2007) (emphasis added) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). This exhaustion requirement applies even to *pro se* plaintiffs, and even if the claim is presented to the agency and denied by the agency shortly after the Complaint is filed and before substantial progress is made in the litigation. *McNeil*, 508 U.S. at 112-13.

The exhaustion requirement of the FTCA thus is comprised of two parts: the presentation of the claim to the agency, and the subsequent denial of the claim by the agency. 28 U.S.C. § 2675(a). The USPTO's regulations require all administrative tort claims to be submitted to the USPTO's General Counsel. 37 C.F.R. § 104.41. In her Complaint, Plaintiff does not allege having filed an administrative tort claim with the USPTO General Counsel, and Defendant is not aware of any such claim being filed.[7] See attached Kauffman Declaration. The only act that could arguably be construed as presenting a tort claim to the USPTO would be Plaintiff's petition to the Director, which was submitted to the Director of the "technology center" in which her application was being examined, and not to the Director of the USPTO or, for that matter, to the General Counsel of the USPTO as required by 37 C.F.R. § 104.41.[8] *See* Compl., Att. 16 (Decision on Plaintiff's petition, signed by Bruce M. Kisliuk, Director, Technology Center 1600).

But even if Plaintiff's petition could be considered an adequate presentation of her tort claim to the USPTO, Plaintiff still did not exhaust her administrative remedies before filing the complaint, because she did not wait until either (1) the USPTO denied her tort claim, or (2) six

---

[7] It is Plaintiff's burden to establish subject matter jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178 (1936).

[8] Plaintiff did not attach her Petition to the Director to the Complaint, but refers to it in the body of the Complaint. *See, e.g.*, Compl. at 9.

months had transpired. The Decision on Petition *cannot* be considered the requisite denial of her claim, because under 37 C.F.R. § 104.42, "[o]nly a decision of the Director [of the USPTO] or the General Counsel regarding . . . denial of any claim under this subpart may be considered final for the purpose of judicial review."

In sum, the Complaint must be dismissed for lack of subject matter jurisdiction, since Plaintiff did not completely exhaust her administrative remedies before filing her Complaint.

      **B.     Plaintiff's Non-Tort Claims, If Any, Should Be Dismissed for Lack of Subject Matter Jurisdiction**

To the extent that Plaintiff's claim for $450 million in damages can be read to be a non-tort claim, the Tucker Act, which is a limited waiver of sovereign immunity for certain non-tort claims, would have given the United States Court of Federal Claims exclusive jurisdiction over the claim. 28 U.S.C. § 1491(a); *United States v. Hohri*, 482 U.S. 64 (1987). Accordingly, this Court is without jurisdiction to hear any non-tort claim Plaintiff might have raised.

Moreover, Plaintiff has not identified the source of her non-tort cause of action. The Tucker Act does not itself create substantive rights. *See United States v. Mitchell*, 463 U.S. 206, 216-217 (1983). Plaintiff does not point to any statute or regulation that would allow her to sue the USPTO for non-tort damages arising out of the delay in prosecuting her application, the establishment of a restriction requirement, or the rejection of her claims under 35 U.S.C. § 112. Nor is Defendant aware of any such statute or regulation. Accordingly, even if Plaintiff's claims can be construed as non-tort claims, they should be dismissed.

> C.    **Plaintiff's Summary Judgment Motion Fails to Show Material Facts Establishing That She Is Entitled to Judgment as a Matter of Law**.

"The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact." *Cecala v. Newman*, 2007 WL 1297241, *4 (D.Ariz.2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate against a party who "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*., 477 U.S. at 322.

Local Rule 7 provides that "Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement." Plaintiff has not submitted a separate statement of material facts as is required.  Moreover, even if section one of plaintiff's motion were intended to be a statement of material facts, it fails to establish the essential elements of an actionable tort claim against the United States, for the reasons discussed above.

### III.  CONCLUSION

For the foregoing reasons, the Complaint should be dismissed and Plaintiff's motion for summary judgment should be denied.

                    Respectfully Submitted,

                    _____/s/_____
                    JEFFREY A. TAYLOR, D.C. Bar #498610
                    United States Attorney

                    _____/s/_____
                    RUDOLPH CONTRERAS, D.C. Bar #434122
                    Assistant United States Attorney

                    _____/s/_____
                    RHONDA C. FIELDS
                    Assistant United States Attorney
                    Civil Division
                    555 Fourth Street, N.W.
                    Washington, D.C.  20530
                    202/514/6970
                    Facsimile: (202) 514-8780

*Of Counsel*:
Stephen Walsh
Acting Solicitor, U.S. Patent and Trademark Office

Benjamin D. M. Wood
Joseph G. Piccolo
Associate Solicitors

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 14th day of January, 2008, a copy of the foregoing Motion to dismiss and opposition to plaintiff's motion for summary judgment was mailed, postage prepaid to plaintiff pro se

FAYE ZHENGXING
3736 10th Avenue
Apartment 2H
New York, NY 10034

                                          Rhonda C. Fields
                                          Assistant United States Attorney

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

FAYE ZHENGXING,            )
                           )
         Plaintiff,        )
                           )
    v.                     )    Civil Action No. 07-1918 (KWR)
                           )
UNITED STATES PATENT       )
AND TRADEMARK OFFICE,      )
                           )
                           )
         Defendant.        )
                           )

### DECLARATION OF PHILLIP J. KAUFFMAN

I, Phillip John Kauffman, hereby declare and say:

1. I am an associate counsel, Office of General Law (OGL), Office of General Counsel, U.S. Patent and Trademark Office. I have been in this position from October 2006 to the present.

2. In my position I am responsible for evaluation and processing of all Federal Tort Claims Act matters addressed to the Office of General Counsel, and thus would have received any correspondence from Plaintiff Faye Zhengxing.

3. From October 26, 2006, to the present I have not received for processing, nor have I processed, any tort claim from plaintiff Zhengxing.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 11th day of January, 2008.

                                    _____
                                    Phillip J. Kauffman

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAYE ZHENGXING, ) Plaintiff, ) v. ) ) UNITED STATES PATENT ) AND TRADEMARK OFFICE, ) ) Defendant. ) | Civil Action No. 07-1918 (RWR) |

**ORDER**

Upon consideration of defendant's motion to dismiss and opposition to plaintiff's motion for summary judgment, it is hereby

ORDERED that defendant's motion to dismiss plaintiff's complaint is GRANTED, and it is further

ORDERED that plaintiff's motion for summary judgment is DENIED.

Date: _____
 UNITED STATES DISTRICT JUDGE